**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**5:16-cv-62-FDW**

| | |
|---|---|
| DEVIN HYMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| FNU MILLER, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants Stephanie Miller, John Z. Causby, Kyle Murray, and Phillip Carswell, (Doc. No. 106).

**I.      BACKGROUND**

**A.      Procedural Background**

Pro se Plaintiff Devin Hyman, a North Carolina inmate incarcerated at Maury Correctional Institution in Maury, North Carolina, filed this action on April 15, 2016, pursuant to 42 U.S.C. § 1983. In the Complaint, filed pursuant to 42 U.S.C. § 1983, Plaintiff alleged that moving Defendants Stephanie Miller, John Z. Causby, Kyle Murray, and Phillip Carswell, correctional officers at Alexander Correctional Institution at all relevant times, used excessive force against him on February 4, 2016, while Plaintiff was incarcerated at Alexander.

On March 16, 2018, Defendants filed the pending summary judgment motion. (Doc. No. 106). On March 21, 2018, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). (Doc. No. 109). Plaintiff filed a response to the summary

1

judgment motion on April 2, 2018, and Defendants filed a Reply on April 9, 2018. (Doc. Nos. 111, 113).

### B. Factual Background

### 1. Plaintiff's Allegations

According to Plaintiff's Complaint, on February 4, 2016, while Plaintiff was housed at Alexander Correctional Institution, he got into a verbal altercation with Defendant Miller. (Doc. No. 1 at 3-4). Defendant Miller then discharged a single burst of pepper spray. (Id.). Plaintiff struck Defendant Miller with a closed fist before additional correctional staff secured him. (Id.). Plaintiff alleges that after he was fully secured, Defendants Miller, Murray, and Causby continued to punch, kick, and knee Plaintiff in the face and upper body. (Id.). Plaintiff alleges that, after being escorted to the shower for decontamination of the pepper spray, Defendant Murray stomped his face into the shower floor. (Id.). Plaintiff also alleges that Defendant Carswell kicked Plaintiff's side while he was in full restraints in the shower, and that Defendant Causby repeatedly kneed Plaintiff in his side and upper body.[1] (Id.).

Plaintiff claims to continue to suffer from head injuries, major headaches, light-headedness, and vision loss as a result of the excessive force incident. (Id. at 4). Plaintiff also claims emotional injury and "emotional tremor," which require medications. (Id.). Plaintiff purports to bring claims against Defendants for excessive force in violation of his Eighth Amendment rights. (Id. at 2-3). Plaintiff seeks $75,000 in damages. (Id. at 4).

### 2. Defendants' Summary Judgment Materials

---

[1] As the Court discusses in footnote 2, infra, in his original Complaint, Plaintiff did not mention Defendant Causby with regard to the excessive force used in the decontamination shower, but he alleges in a sworn affidavit, in his summary judgment response, that Causby participated in the alleged excessive use of force in the decontamination shower.

In support of the summary judgment motion, Defendants rely on the sworn affidavits of Defendant Miller, Defendant Causby, non-party R. Preston Townsend, and non-party Jeffrey Duncan, along with exhibits, including videotaped surveillance footage of the alleged excessive force incident that occurred outside of the DHO.[2] Defendants' summary judgment evidence shows the following:

On February 4, 2016, Alexander officers attempted to bring Plaintiff to the Disciplinary Hearing Office ("DHO"). (Doc. No. 107-1 at ¶ 5: Miller Aff.; Doc. No. 107-3 at ¶ 5: Causby Aff.; Doc. No. 107-2 at ¶¶ 5-6: Townsend Aff.). Plaintiff refused to enter the DHO. (Doc. No. 107-1 at ¶ 6; Doc. No. 107-2 at ¶ 7). Defendant Miller stepped out of the DHO into the hallway to see if the officers needed assistance. Alexander Unit Manager Townsend instructed Defendant Miller to cuff Plaintiff and take him to Restrictive Housing. (Doc. No. 107-1 at ¶ 7; Doc. No. 107-2 at ¶ 8). Plaintiff had indicated that he wanted to go on Self-Injurious Behavior ("SIB") precautions because he had thoughts of hurting himself. (Doc. No. 107-1 at ¶ 8; Doc. No. 107-2 at ¶ 9; Doc. No. 107-3 at ¶ 5). Defendant Miller informed Plaintiff that if he wanted to go on SIB precautions, he would have to be placed in hand restraints. (Doc. No. 107-1 at ¶ 9).

Defendant Miller told Plaintiff to submit to restraints, and Plaintiff refused. (Doc. No. 107-1 at ¶ 10; Doc. No. 107-2 at ¶ 9; Doc. No. 107-3 at ¶ 5). Defendant Miller then pulled over a plastic chair and ordered Plaintiff to sit in the chair and submit to handcuffs. Plaintiff continued to refuse to submit to hand restraints. (Doc. No. 107-1 at ¶¶ 11-13; Doc. No. 107-2 at ¶ 10). At that time, Defendant Miller administered a short burst of pepper spray to Plaintiff's face. (Doc. No. 107-1 at ¶ 14; Doc. No. 107-3 at ¶ 7). Plaintiff lunged at Defendant Miller and

---

[2] For obvious privacy reasons, there appears to be no videotaped surveillance footage as to the alleged excessive force incident in the decontamination shower.

swung at her with a closed fist, striking her in the forehead. (Doc. No. 107-1 at ¶ 15; Doc. No. 107-3 at ¶ 9). Defendant Causby drew his baton, but was unable to strike Plaintiff, who was surrounded by other staff members. (Doc. No. 107-3 at ¶¶ 8-9). In their attempts to gain compliance and prevent further assaults, staff members took Plaintiff to the ground. (Doc. No. 107-1 at ¶ 16; Doc. No. 107-2 at ¶¶ 13-14; Doc. No. 107-3 at ¶ 10).

Even after being taken to the ground, Plaintiff continued to resist, disobey orders, and be combative. (Doc. No. 107-3 at ¶ 11; Doc. No. 107-4 at ¶¶ 7-8: Duncan Aff.). Various staff members assisted in subduing and restraining Plaintiff's hands and legs. (Doc. No. 107-1 at ¶ 17; Doc. No. 107-2 at ¶¶ 15-16; Doc. No. 107-3 at ¶¶ 12-14; Doc. No. 107-4 at ¶¶ 9-10). Staff applied restraints, pulled Plaintiff up off the ground, and escorted him to D-Wing for a decontamination shower. (Doc. No. 107-2 at ¶ 17; Doc. No. 107-3 at ¶ 14; Doc. No. 107-4 at ¶ 11). After the decontamination shower, Plaintiff was medically screened and placed in a cell under SIB precautions. (Doc. No. 107-4 at ¶¶ 14-15).

The investigating officer who investigated the February 4, 2016, incident, Raymond L. Hamilton, concluded that at the beginning of the altercation with Defendant Miller, Plaintiff put his crutches aside to square off with correctional staff. (Doc. No. 107-1 at ¶ 22; Doc. No. 107-2 at ¶ 21; Doc. No. 107-3 at ¶ 18; Doc. No. 107-4 at ¶ 19). Officer Hamilton also found that Defendant Miller administered pepper spray and that Plaintiff attacked her and punched her in the head. (Id.). Finally, Officer Hamilton found that Plaintiff also attacked several other staff members who tried to control Plaintiff. (Id.).

As to Plaintiff's injuries, while Defendants do not address Plaintiff's injuries in their memorandum supporting summary judgment, the incident reports attached to Defendants' summary judgment materials note that a nurse who examined Plaintiff after the incident noted

4

"swelling of [Plaintiff's] left eye and blood on his nose and lips." (Doc. No. 107-2 at 13). Subsequent x-rays revealed no fractures. (Id.).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

5

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

### III. DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore, although the lack of serious injury may be considered a factor in the excessive force analysis, the fact that the prisoner suffered only minor injuries is not dispositive in an excessive force claim. See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

**A. Plaintiff's Claims Against Excessive Force against Defendant Miller and the**

**other Moving Defendants Based on Force Used in the Hallway Outside of the DHO.**

The Court finds that Defendants are entitled to summary judgment as to Plaintiff's claims of excessive force while he was outside of the DHO. The undisputed evidence shows that Defendants applied force in a good-faith effort to maintain or restore discipline, and not maliciously and sadistically to cause harm. First, as to Defendant Miller's conduct, Defendants' summary judgment evidence shows Defendant Miller had been physically assaulted by Plaintiff, observed Plaintiff continuing to struggle with herself and other correctional staff, believed that the application of some force was necessary to protect herself and others, and used the type and amount of force expected of her under the NCDPS Use of Force Policy. No reasonable interpretation of the facts exists under which a jury could find that Defendant Miller violated Plaintiff's Eighth Amendment rights by spraying Plaintiff with pepper spray, taking him to the ground, and applying restraints. Furthermore, as to the remaining Defendants' conduct while Plaintiff was outside of the DHO, the Court finds that the evidence on summary judgment shows these Defendants also used force in a good-faith effort to restore discipline.

In his response, Plaintiff argues, among other things, that the applicable "Use of Force Policy" prohibits a correctional officer from using force solely as a result of verbal provocation or as punishment. (Doc. No. 111 at 1). Defendants contend, however, and the Court agrees, that the video surveillance footage shows that the use of force on February 4, 2016, was reasonable, appropriate, and in response to Plaintiff's actions of assaulting and choking staff members, not the result of mere verbal provocation or as punishment. As noted, Plaintiff admits that he both refused to go into the DHO Room as ordered and that he struck Defendant Miller. (Id.). Further, the video surveillance footage confirms that the use of force (outside the DHO)

7

ended when Plaintiff was restrained and order was restored. Accordingly, this argument is without merit.

Plaintiff also argues in his response that he could not have effectively resisted orders or shown non-compliance on February 4, 2016, because he was walking with crutches. (Doc. No. 111 at 2). Even though Plaintiff was walking with crutches, the video surveillance clearly shows Plaintiff being non-compliant, resisting orders, "squaring off," and preparing to fight with correctional staff. Further, the crutches themselves could have been used as weapons if correctional staff had not taken Plaintiff to the ground to apply restraints. Moreover, the video surveillance confirms that Plaintiff was able to effectively assault, resist, and fight against numerous correctional staff members, despite that he was on crutches. Accordingly, this argument is also without merit.

In sum, the Court finds that Defendants are entitled to summary judgment as to Plaintiff's excessive force claim against them arising out Defendants' conduct while Plaintiff was outside of the DHO.

**B. Plaintiff's Claims Against Defendants Carswell, Causby, and Murray Based on the Alleged Use of Excessive Force by These Defendants While Plaintiff Was in the Decontamination Shower.**

In addition to alleging that Defendant Miller and the other moving Defendants used excessive force against him outside the DHO, Plaintiff has also alleged that Defendants Carswell, Causby, and Murray used excessive force against him while he was in the decontamination shower.[3] The Court denies Defendants' motion for summary judgment as to

---

[3] Plaintiff did not mention Defendant Causby in his original Complaint in his allegations related to excessive force used in the decontamination shower. Furthermore, Defendant Causby's own

this part of Plaintiff's excessive force claim. First, the Court notes that Defendants have not submitted any evidence on summary judgment refuting Plaintiff's claim that Defendants Carswell, Causby, and Murray used excessive force against him while he was in the decontamination shower.[4] Moreover, in response to the summary judgment motion, Plaintiff has submitted a sworn affidavit, stating that, while Plaintiff was in the decontamination shower, he "was still being beat"; that Defendant Murray "stomped [his] head in the shower floor"; Defendant Carswell "repeatedly punched him in the left side of the face"; and Defendants Carswell and Causby "repeatedly kneed him in [his] side and upper body." (Doc. No. 111-1 at ¶¶ 8-11). Plaintiff also asserts that when he was removed from the shower officers made him walk backwards so the video cameras could not record his injuries. (Id. at ¶ 15). Defendants wholly failed to address these sworn allegations in their Reply brief. On summary judgment, this Court is not entitled to make a credibility determination as to Plaintiff's allegations regarding the force used in the decontamination shower. Moreover, given that Plaintiff had at least some

---

affidavit seems to indicate he was not present in the decontamination shower, and his only interaction with Plaintiff was when Plaintiff was in the hallway outside the DHO. See (Doc. No. 107-3 at ¶ 4) ("stating that "my only interaction with Plaintiff was assisting in taking him to the ground"). Nevertheless, Plaintiff alleges in his sworn affidavit in response to Defendants' summary judgment motion that Causby participated in the alleged use of excessive force in the decontamination shower. See (Doc. No. 111-1 at ¶¶ 8, 11) (alleging that once Plaintiff was in the decontamination shower, Causby "repeatedly kneed me in my side and upper body"). The parties may sort out this discrepancy at trial.

[4] Defendants acknowledge in their summary judgment memorandum that Plaintiff has alleged that "after being escorted to the shower for decontamination of the pepper spray . . . Defendant Murray stomped [Plaintiff's] face into the shower floor" and that Plaintiff has also alleged that "Defendant Carswell kicked Plaintiff's side while he was in full restraints in the shower." (Doc. No. 107 at 2). Unfortunately, however, and rather inexplicably, Defendants have wholly failed to address or rebut, by affidavits or otherwise, this part of Plaintiff's claim in their summary judgment motion. Given this, as well as considering Plaintiff's own, sworn affidavit opposing the summary judgment motion, the Court is constrained to deny summary judgment as to this part of Plaintiff's excessive force claim.

9

injuries, this Court cannot conclude as a matter of law that no reasonable jury would find that excessive force was used against Plaintiff while he was in the decontamination shower. That is, Plaintiff's injuries may have resulted from the use of force while he was outside the DHO, rather than while he was in the decontamination shower, but that is a factual issue for a jury to decide.

In sum, considering the evidence presented by Plaintiff on summary judgment, and construing all inferences in the light most favorably to him, the Court finds that Plaintiff has submitted enough evidence on summary judgment to withstand the motion by Defendants Carswell, Causby, and Murray as to the alleged use of excessive force against Plaintiff while he was in the decontamination shower.

The Court notes that these Defendants also raise qualified immunity as a defense to Plaintiff's claim for monetary damages. The qualified immunity doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). To establish qualified immunity, an officer must show (1) that the facts, taken in the light most favorable to the plaintiff, do not establish a violation of a constitutional right, or (2) that the alleged right, even if violated, was not "clearly established" at the time of the incident. See id. Accordingly, even when the facts in the record establish that the official's conduct violated a plaintiff's constitutional rights, the officer still is entitled to immunity from suit "if a reasonable person in the [officer's] position could have failed to appreciate that his conduct would violate those rights." Torchinsky v. Siwinski, 942 F.2d 257, 261 (4th Cir. 1991) (citation and internal quotation marks omitted). In considering qualified immunity on summary judgment, the Court takes as true Plaintiff's allegations and construes them in the light most favorable to Plaintiff.

See Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008). "[S]ummary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants." Vathekan v. Prince George's Cnty., 154 F.3d 173, 180 (4th Cir. 1998).

Here, according to Plaintiff's version of events as set forth in his sworn affidavit, Defendants used force against Plaintiff in the decontamination shower, while Plaintiff was neither resisting nor acting disruptive, specifically by stomping his head into the shower floor, repeatedly punching him in the left side of his face, and repeatedly kneeing him in his side and upper body. This alleged conduct, if believed, clearly violates the Eighth Amendment prohibition against excessive force. In sum, the Court finds that Defendants are not entitled to qualified immunity because a material actual dispute exists regarding the conduct of Defendants Carswell, Causby, and Murray while Plaintiff was in the decontamination shower.

## IV.     CONCLUSION

For the reasons stated herein, Defendants' summary judgment motion is denied in part and granted in part.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 106), is **DENIED** in part and **GRANTED** in part. That is, the Court **DENIES** Defendants' summary judgment motion as to Plaintiff's excessive force claim against Defendants Carswell, Causby, and Murray based on alleged use of excessive force by these Defendants while Plaintiff was in the decontamination shower. The Court **GRANTS** Defendants' summary judgment motion as to Plaintiff's excessive force claim based on the alleged use of excessive force while Plaintiff was standing outside the DHO.

2. In accordance with this Order, Defendant Miller is hereby terminated as a Defendant. The remaining Defendants shall remain in this action for a trial as to Plaintiff's excessive force claim against them based solely on their conduct on February 4, 2016, while Plaintiff was in the decontamination shower at Alexander Correctional Institution.

Signed: March 4, 2019

Frank D. Whitney
Chief United States District Judge